1485 Mears Technologies, Inc. v. Finisar Corporation, Mr. Somerville. Thank you, Your Honor. May it please the Court. The sole claim construction issue on appeal is whether the two claimed wavelength dispersive elements, one programmable, the other not, must be included in the claimed spatial light modulator. I want to go straight to the claim, which appears on page 852, column 8, and it's clear that it is the tunable filter that does the comprising of this claim. We're talking here about Claim 1? Claim 1, yes, Your Honor. It's representative of all the claims. Let me just tell you what I'm, I guess, focusing on, on the claim language. Tunable filter that comprises this modulator, and then it starts talking about what is going on with the modulator. It's for displaying certain data as a series combination of. Now, as a series combination of, because of the word combination, naturally means at least two things are going to follow that word combination. Not just one thing. So that notwithstanding the extremely peculiar comma in that claim language, the natural meaning is the combination is the two things, the two filters. Can we call them filters instead of dispersive elements? We can. Okay. The two filters. So, and this is, right, the series combination itself is introduced by something that the modulator, the function of the modulator is to display as a series combination of two things. Why does that not naturally mean those two filters have to be part of the modulator? Because it's actually the function of the optical filter, the very first words in the claim. That's what's doing the displaying here. And let me be the first to concede that this language is not as clear as it could be. I thought you conceded that both the dynamic and static filter, if that's what we're calling them, achieve the display. They do, Your Honor, but that begs, whether something is displaying begs the question, do the things doing the displaying have to be within the spatial light modulator? And I believe this is where the specification and the figures in the specification are instructive. I'd like to go to figures 1, 2A, and 2B on page A44 to begin with. These all show, according to the specification, the optical filter as opposed to the spatial light modulator. And they are all identical except for the input configurations on the left side of the figures. Other than that, they all depict identically element 2 and element 3, the former being the static wavelength dispersive element and the latter being the programmable dispersive element. They are clearly depicted as separate things. So, why that becomes important is if we look at column 4 on page A50. The specification describes the dynamic hologram 3 would probably be implemented as an electronically controlled image displayed on an amplitude or phase modulated SLM. SLM standing for spatial light modulator. So here, the specification very clearly talks about the SLM in terms of element 3 and not element 2. And there are, I don't know, four or five such references in the specification. Given the claim language and the prosecution history, why is that enough? Because, Your Honor, if we look at, again, going back to the notion that the claim could be written clearer, it clearly doesn't say that those two elements are in the spatial light modulator. Yeah, but the prosecution history said that. Let's turn to that, Your Honor. And if we want to look at a good synopsis of what the prosecution history and its relevant part says, we can turn to page 4 of the red brief. So we start with what is in the first paragraph under the heading Prosecution History of the 361 Patent. And the third sentence reads, The examiner stated that, quote, The claims purport to be for a wavelength selective filter, not a spatial light modulator, but they fail to set forth the structure of the electronically programmable spatial light modulator. The electronically programmable, that isn't the static wavelength dispersive element. As FINISAR itself admits, that dispersive element isn't programmable. It's fixed. So then we look below that to the actual amended language and the deleted language that FINISAR has put forth in the block quote below that. And then we go to the applicant's comment. And that's in the paragraph following the block quote. The applicant also provided comments explaining its amendment. Quote, The amendment to claim 1 recites a serious combination of two wavelength dispersive elements in the spatial light modulator. And yes, again, reading in a vacuum, that would seem to indicate that both are in the spatial light modulator. The problem, I guess, is that it seems to me this really is pretty darn significant because it's not in a vacuum. The examiner says, show me the structure of the modulator. And the language then gets changed to say something. He introduces this language as a series combination of. You got to have two things after that language, which means that the structure, the response to the demand for structure of the modulator, not of the tunable filter of the modulator, is something that's a series of combination of both filters. And then the explanatory comment says, yeah, we actually mean that. Both are in the modulator. It seems to me not kind of extraneous, not even terribly unclear. Judge, it is absolutely unclear. And point of fact, as this Court has said on multiple occasions, beginning with Phillips, the reason that the prosecution history is less reliable than the specification is because it is this back and forth between the applicant and the examiner. It tends to be less specific. This is one of those instances. But this was pretty specific in this instance. Your Honor, if we actually look at the amended language. It also confirms the most natural reading of the claim language itself. Your Honor, with all due respect, that is not the most natural reading, especially if we read the claim. I don't know. I mean, when you use the words as a series combination, it seems as a matter of grammar to require that the two things following that be in a series. Your Honor, what's described as the series is the thing for displaying computer-generated hologram patterns of data. And as everything in the specification indicates. A spatial light modulator for displaying. Your Honor, that's not what does the displaying in this patent. It is the tunable filter. Well, then you put the clause in the wrong place. That might be, Your Honor. And again, as I said, I will be the first to concede this language is not as clear to me. Well, if that's all we had and we had that conflict with the specification, then you might have a better case. But what we have is claim language that most naturally reads one way that may conflict with some parts of the specification, but it's confirmed by the prosecution history. It conflicts with all parts of the specification, Your Honor, not just a few. Figures 1, 2A, 2B, 3, and 6. Plus the specification that was written before the claims were amended to respond to the examiner's rejection. Your Honor, I'm aware of no law that says that that matters. In other words, if the specification is... It has to matter. I mean, that's the whole point of examination is that things which might have been claimed are given up. Things are clarified. I mean, that's what goes on. It does go on. But as this Court has noted again, over and over again, the specification has primacy in assisting in the interpretation of the claims. The prosecution history is less reliable because it is less specific. It's the bargain between the applicant and the patent office. This is what we have here. If FINISAR's construction is upheld, if the district court's construction is upheld, every single embodiment of the tunable filter is now excluded because every single embodiment has the programmable wavelength dispersive element as the SLM and the fixed grading being something else. So all those figures I just listed, every single figure that purports to depict the filter is now excluded. And assuming for the moment that that is the most natural reading of the claim,  and there's no case law that says that the most natural reading of a claim is the one that must control, especially when a claim is read in light of the specification. And to be clear, FINISAR has never argued that the applicant somehow disavowed claimscope by making the statement it did. That is said itself in the red brief. It also said that the district court didn't rely on disavow. It just relied on this particular piece. You don't have to have a disavow. It's a question of plain interpretation. That's true, Your Honor. But then if it's not disavow, that piece of evidence becomes just that, a piece of evidence that has to be looked at in terms of all the other evidence in the record. The myriad statements in the specification, indeed all the statements in the specification that purport to describe the filter, it has to be compared to that. Disavow would be a powerful argument because it would trump everything else. Here there's no such argument made. It is a piece of evidence to be weighed with everything else. And we would suggest there is a long line of cases that says that if you exclude the best mode of practicing the invention described in a specification, that's presumptively erroneous claim construction. Pretty clearly, Your Honors, if all the modes are excluded, that would be even more suspect as a claim construction, especially, again, given the fact that the evidence that FINISAR and the district court relied upon so heavily comes from a source that this court has said is less specific and therefore less reliable than the specification. Your Honors, that concludes all I have to say on this. I'd like to reserve the remainder of my time to address whatever issues there are on sanctions. Mr. Radulescu, am I pronouncing that correctly? Radulescu. Good morning. I'd like to spend a few minutes on the claim construction issue and then move to the exceptional case determination. With respect to claim construction, I think we should step back and let's talk about exactly what happened during prosecution. The rejection. Can you talk about the spec first? I mean, overwhelmingly, their strongest point. There is. I get to finish my question before you get to start answering because you don't even know what the question is.  Overwhelmingly, their strongest point is the spec. So can you talk about whether it is true or not true that this interpretation of the claim would be inapplicable to every embodiment described in the spec? Not true. Where is an embodiment that would talk about the modulator as including, say, both 3 and 2 in the main figure? There is two places that disclose etching the fixed dispersive element on the glass of the variable filter. Those two places are in column 2, beginning at line 20 to 25. And then the second place is in connection with column 7, lines 9 through 11. Those are two disclosures that say, with respect to this fixed grating, we can etch it on the surface of the glass of the variable grating, the spatial light modulator. So we have two places in the spec where clearly the claims would continue to read on. That's the spec evidence. It's not absolutely no embodiments that the claims would end up describing. Then we move, of course, to the most natural reading of the claim. I think I may be having a block here. Connect the specific claim construction. Modulator has to have both the fixed and the dynamic filters. If that's true, what embodiment in the spec talks about or shows a modulator that would... So at column 2, line 20, it's the paragraph that is discussing the fixed grating for the very first time in the disclosure of the invention section. So when we talk about the fixed grating for the very first time in the paragraph at column 2, beginning at line 20 to 25, it says the fixed grating may simply have the form of a fixed regular amplitude grating or faceplate. And then it goes on in one additional sentence to say when the fixed grating has the form of a faceplate, it may be etched. It may be an etched glass plate and may be physically combined with the dynamic holographic diffraction element by, for example, etching, being etched into its outer surface. Its outer surface is the reference to the outer surface of the... And what's your understanding of physically combined there? I mean, does that mean... In this case... There's no space between them? In this case, the outer surface of the variable grating is glass. They are made of glass. The outer surface is glass. And this is saying I'm going to etch it. I'm going to scrape onto its surface a fixed grating. That is one embodiment that's described in connection with the very first paragraph where it's talking about the fixed grating. So there are actually... There's no 2 in that. There's just a 3 with something etched on the back of it. There is a variable grating where the surface of that variable grating is etched. So the fixed grating is physically combined with the variable. So that's clear with respect to this claim as properly construed reads on this embodiment. We have the most natural reading as well that Judge Hughes pointed to originally. And I do want to spend one more minute on just really what happened during prosecution. The fight was over the structure of the modulator was not clear. The claim was rejected as not being specific enough. The examiner said Mears had failed to set forth the structure of the electronically programmable spatial light modulator. It was unclear. And so what did they do? They amended the claims with respect to the modulator inserting the language as a series combination of the first and the second. So they amended the claim. The most natural reading of that, as we normally read, was then further reinforced when they explained the amendment. This amendment was explained and Mears stated that the amendment to Claim 1 recites a series combination of the two wavelength dispersive elements in the spatial light modulator. So we have the most natural reading, properly construed, reinforced by exactly the issue before this court. And then we have the filing of a lawsuit on a device that indisputably does not have both components, both gratings or both diffractive elements in it. And that's the reason why the case was frivolous to begin with. With respect to the fees question, the issue here is claim construction. Step 1 of the two-step infringement inquiry. We put aside the accused products. We look at what is the basis for alleging infringement. You have to construe the claim. And our point is, when you look at the rules for construction, you look at Phillips. You've got to look at everything. So tell me why the following, and I know this is contrary to your fees position. The claim language is a mess. It is syntactically a mess. The spec principally talks about the modulator as involving three but not two. Namely, only the dynamic filter. Why is that not enough to make at least reasonable their claim construction? In isolation, I would assert. And by reasonable, I mean could a district court, as this district court did, without abusing its discretion find that to be a non-frivolous, non-exceptional claim construction position? Let's look at both pieces. The claim language you characterize as a mess. The district court judge characterized it as the most natural reading of this claim language doesn't support the claim of infringement. You then went to the specification, and you now talked about there being no embodiments, or that three is not described in two. They're separate things. But that's not correct. There is disclosure in the spec supporting the physical combination showing that there is two in one. So the claim language, in terms of the natural reading, is on defendant's side. The spec is clearly on defendant's side. The issue of whether the claim language can be read in a different way than what is being asserted was never, never asserted or argued below. But look, under Octane, let's assume that their infringement position is very weak. What in Octane and Highmark says that we reverse district courts for not awarding fees when people have weak cases? They don't say that. It's not a weak case. This is a case where there's no evidence of the infringement claim from day one. The reading of the claims, the specification. Even if it's frivolous, what case says that we have to tell a district court to award fees in a frivolous case? The way I read the Supreme Court is there are multiple factors, totality of the circumstances, and unfortunately vague test. But there's nothing in there that says you've got to award fees if it's an unreasonable or frivolous position. So we're not asking this court to order the awarding of fees. We're asking this court to rule that the discretion was abused in the finding that it wasn't an exceptional case based on a couple key errors. The first being the district court's statement or assessment that Mears did not ignore the prosecution history. That was the basis, one of the fundamental bases, for the request for fees, is that the position that they were taking in the litigation was directly contrasted and in contradiction to the position that they took before the patent office. They got the claims, arguing what the structure was, and then they turned around and accused the very structure that was essentially carved out of infringement. That's a Marketech issue. Under Marketech, very similar circumstances where the patentee filed claims, there was rejections, there was a discussion of what the claims cover and don't cover, and then they went ahead and filed suit, taking a position that flew in the face of what was distinguished. OK, so the district court said they addressed the prosecution history. You say, in fact, they didn't. What other error is there in the district court's opinion? The prosecution history was key and fundamental because the claim construction issue was, does the spatial light modulator include both or one? That doesn't answer my question. Aside from that, what is it? The second error is the conclusion that Mears's infringement allegations had merit under this proposed plain and ordinary construction of the term. And the point is that their claim construction position had no merit from day one. With respect to the plain and ordinary, meaning we have a clause. It's actually 30 words long. And the issue is, was there any support for interpreting this 30 word long clause to say that you don't have to have two and one? And from day one, there was no support. It was frivolous because we know about the natural reading. They didn't have an alternative reading. We talked about the spec. What do you mean they didn't have an alternative reading? They didn't have the alternative reading that says it's the filter that's two and one in the district court briefing. In the district court briefing, the argument that this two and one applies to the filter, not the spatial light modulator, was never made. In the district court briefing, we disputed the construction of this 30 word term. And all we effectively had was, oh, look at there's figures in the spec that shows that they're separated. So the point is they didn't have something grounded in the claim language to argue to the contrary, to the most natural reading. And then with respect to the spec, we all know that there's figures that sometimes aren't covered. And then with respect to the prosecution history, it's crystal clear. Yeah, but usually we don't have an instance where none of the figures are covered. And in this case, we aren't in that situation. We are not in a situation where the claims are describing something that's not disclosed. Wait, but when you were responding to Judge Toronto's questions about the specification disclosing combinations, you pointed to language. You didn't point me to any figures. Well, the figures are actually optical diagrams. They're not structural diagrams. They're described as optical diagrams. Mirrors would like them to be interpreted as these structural diagrams. But the point is when- So is that language you pointed us to earlier describing any of the figures, or is it just It's describing the overall invention. It doesn't refer specifically to the figures. I will agree with that. So there's no figure in the specification that would correspond with the District Court's construction? The figures are optical diagrams. They're not structural diagrams. So I believe that a person with ordinary skill in the art, when looking at an optical diagram, in terms of how it's structurally made, is a different issue. And we're going to look at the disclosure of the structure in the spec to understand- But I would assume if you thought that one of these optical diagrams actually corresponded with the District Court's construction, you would have pointed us to that rather than just to language. That's correct. So you don't have any evidence or any argument that any of the diagrams correspond to construction? Not a literal statement in the spec that says that. I just have other disclosure. So just getting back to- I guess I have one minute left. So unless you have other questions, I will reserve a minute. Okay. Mr. Summerfield, I think you have about four minutes. Your Honors, let's start with column two of the 361 patent, page 849, beginning at line 19. One of the two passages that Mr. Radulescu referred the bench to. And this has to do with the grating being etched into the programmable tuner. He says that that embodiment is covered by the District Court's construction. It's actually not. The District Court says that both devices have to be in the spatial light modulator, not affixed to, not combined with. I can put a weather vane on a barn. That doesn't mean the weather vane is now inside the barn. I understood what Mr. Radulescu was saying. Tell me if this is an incorrect understanding of this passage. You have this single plate. It's dynamic on the front, fixed etched on the back. It's a single physical thing. No, Your Honor. Is that wrong? It's the glass plate of the programmable tuner that's being etched. But the programmable tuner is more than just the glass plate. The glass plate is static. Its advantage is, as Finisar itself says, its advantage is it can... But they're physically part of the same thing, right? That doesn't mean that one is in the other, Your Honor. That's the point. And, Judge, if we're looking at how this fits with the rest of the teachings, it's fairly clear that you have two kinds of dispersion going on here. One is programmable. The other is not. And to say that this passage somehow says you eliminate element two once you've etched it onto the glass of element three is a mischaracterization of this passage and every other teaching in this patent. Now, Finisar goes to great length in its discussion of the technology ensued in the red brief to distinguish between a programmable tuner and a fixed tuner, talking about the advantages and disadvantages of each at page four. That distinction doesn't go away. So column seven, lines nine through 11, the size of the system could be reduced further by etching the fixed grading or hologram directly onto a glass face of the SLM, that's the modulator, dynamic hologram device. That's right, Your Honor. But the glass face isn't the only part of the SLM. Again, you're fixing it by etching it, but you're not putting it in the SLM. Again, like putting a weather vane on a barn. You can put the two things together, and, yes, it does make the system smaller, but it doesn't eliminate the need for element number two. It's still there. And it is fundamentally distinct from element three. Both things are still there. And if we're talking about embodiments that practice the claim, Your Honors, to look at that teaching in light of all the other iterations of the invention that are described and depicted in this specification, one has to come to the conclusion that these two passages simply talk about taking two elements and combining them but not putting both into the first. That is simply a misread of this specification. So in your view, this column 7, 9 through 11 lines, the front of this single plate would be the modulator, but the back would not? The back and everything else. It's not just the plate of glass. It's the tunable portion, the pixels that are tunable here that allows the tunability of how the wavelengths are dispersed. It's not just a piece of glass. It can't be. It has to be something that's programmed. I'd like to spend a few minutes on the issue of sanctions. First of all, if we look at figures 1a, 2a, and 2b, this is precisely what was being accused of infringement in this case, and that's never been contested below. So the only way this becomes frivolous is if we start from the very beginning to say that the claim construction just excludes these embodiments. Secondly, there's... Okay, I think we're out of time. Unless my colleagues have questions. Thank you, Your Honor. Mr. Redleskin. Yeah, I have one minute, and I'll stick to it. There's the two disclosures in the spec, the column 7 disclosures. No, that's not part of your rebuttal. That's not about the attorney's fees. Well, it's the, you know, there's a baseless claim of infringement that's not supported by this spec. Okay, go ahead. Not supported by this spec. The claim, its most natural reading, requires both 2 and 1. The specification describes embodiments where both are in the spatial light modulator, and we've got prosecution history that's crystal clear that what happened during the prosecution was there was an issue as to what the structure was. It was clarified. It was made clear in the prosecution history, and then we have a case that was then filed that flies in the face of what was argued to the patent office. That falls within Martek's determination. Okay, thank you, Mr. Redleskin. Thank you very much, Your Honor. Thank both counsel. The case is submitted.